IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CV-00309-RN

**Karen Jacobs Young,**

    Plaintiff,

v.

**Nancy A. Berryhill**, Acting Commissioner of Social Security,[1]

    Defendant.

**Memorandum & Order**

Plaintiff Karen Jacobs Young instituted this action on October 11, 2016, to challenge the denial of her application for social security income. Young claims that the Administrative Law Judge ("ALJ") Ronald Sweeda erred in (1) evaluating her allegations of pain, and (2) weighing the medical opinion evidence. Both Young and Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 24, 26.

After reviewing the parties' arguments, the court has determined that ALJ Sweeda reached the appropriate decision. ALJ Sweeda appropriately considered Young's statements of pain and offered reasons for declining to fully credit her allegations. Additionally, ALJ Sweeda's evaluation of the medical opinion evidence is supported by substantial evidence. Therefore, the court denies Young's motion, grants Berryhill's motion, and affirms the Commissioner's decision.[2]

---

[1] Berryhill replaced Carolyn Colvin as the Acting Commissioner of Social Security on January 20, 2017.

[2] The parties have consented to jurisdiction by a United States Magistrate Judge. 28 U.S.C. § 636(c). 28 U.S.C. § 636(b). D.E. 15.

I.  **Background**

On May 9, 2012, Young protectively filed an application for disability benefits alleging a disability that began on September 12, 2012. After her claim was denied at the initial level and upon reconsideration, Young appeared before ALJ Sweeda for a hearing to determine whether she was entitled to benefits. ALJ Sweeda determined Young was not entitled to benefits because she was not disabled. Tr. at 17–29.

ALJ Sweeda found that Young had several severe impairments: asthma, obesity, history of cerebrovascular accident ("CVA"), fibromyalgia, and depression. Tr. at 19. ALJ Sweeda found that Young's impairments, either alone or in combination, did not meet or equal a Listing impairment. Tr. at 21.

ALJ Sweeda then determined that Young had the RFC to perform a range of light work with additional limitations. Tr. at 22. She must avoid any exposure to temperature extremes, high humidity, concentrated pulmonary irritants, or workplace hazards. Tr. at 22–23. Additionally, Young is capable of simple, repetitive tasks in a work environment where fast-paced production is not required. *Id.*

ALJ Sweeda concluded that Young was incapable of performing her past relevant work as a child support worker. Tr. at 28. But ALJ Sweeda determined that, considering Young's age, education, work experience, and RFC, there were other jobs that existed in significant numbers in the national economy that Young was capable of performing. *Id.* These include: paper finishing machine operator, bagger, and hand packer/inspector. Tr. at 28–29. Thus, ALJ Sweeda found that Young was not disabled. Tr. at 29.

After unsuccessfully seeking review by the Appeals Council, Young commenced this action in October 2016. D.E. 6.

## II. Analysis

### A. Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to determining whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively* v. *Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). The court must affirm the Commissioner's decision if it is supported by substantial evidence. *Smith* v. *Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson* v. *Barnhart*, 434 F.3d 650 (4th Cir. 2005). The ALJ must consider the factors in order. At step one, if the claimant is engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can

perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Background

Young has had complaints of pain for several years. Although she previously worked as a child support specialist, she stopped working in 2011 due to pain and headaches. Tr. at 23. She relies on her husband to assist her with some personal care but is independent with other activities of daily living. *Id.* She described limitations in her abilities to sit (two minutes), stand (not long enough to wash dishes), and walk (one-half block). Tr. at 23–24. Young also claimed to experience depressive symptoms, including crying spells, feelings of worthlessness, and somnolence. Tr. at 26.

In 2011, Dr. Dixon Gregory diagnosed Young's fatigue and pain as fibromyalgia. Tr. at 20. He noted, however, that her workups had yielded normal results and that she did not respond to fibromyalgia medication, with which she had not been fully compliant. *Id.* Dr. Gregory maintained this as her diagnosis although the medical evidence failed to demonstrate that trigger point assessment was performed. *Id.* Moreover, a subsequent evaluation at Duke University concluded that Young did not have fibromyalgia. *Id.* Imaging studies of Young's cervical and thoracic spines yielded normal results, as did electrodiagnostic testing of her lower limbs and neurological and physical examinations. *Id.*

Dr. Ayman Gebrail performed a consultative examination in August 2012. *Id.* at 25. Young reported fatigue, daytime somnolence, pain, headaches, and problems with memory and concentration. Tr. at 26. Dr. Gebrail's examination was essentially normal, with full range of

motion and steady gait observed. *Id.* He assessed fibromyalgia and noted that the projected limitations were based on Young's subjective statements. *Id.*

Mental health records from 2012 through 2014 demonstrate that Young received counseling services for depression. *Id.* Her diagnoses ranged from mild depression to major depressive disorder. *Id.* Although medications were prescribed, treatment records reflect that Young was not always compliant. *Id.* Mental status examinations yielded largely unremarkable findings. *Id.*

State agency consultants also offered assessments. Tr. at 26–27. Dr. Arne Newman concluded Young had no mental impairments. Tr. at 26. Despite her allegations of memory and concentration issues, Dr. Newman concluded that she had no chronic difficulty with memory and that the medical evidence did not support her allegations. Tr. at 26–27. Dr. Camille Warren opined that Young was capable of medium work with an avoidance of concentrated exposure to extreme heat, humidity, pulmonary irritants, and workplace hazards. Tr. at 27.

In January 2015, Dr. Gregory issued a physical residual functional capacity questionnaire opining that Young could sit for ten minutes and could stand for two minutes while alternating positions at will. *Id.* Dr. Gregory further concluded that Young could never lift more than ten pounds, required a cane to ambulate, needed to elevate her legs to waist level 95% of the day, would need unscheduled breaks every five to ten minutes, and was limited in her ability to move her head. *Id.* Dr. Gregory concluded that Young was incapable of even low stress, sedentary jobs. *Id.*

D.  **Pain**

Young first contends that ALJ Sweeda erred in evaluating her allegations of pain. The Commissioner asserts, and the court agrees, that ALJ Sweeda properly considered Young's allegations of pain.

There is a two-step process to determine whether a claimant is disabled by pain: (1) the ALJ must determine whether the claimant has a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged;" (2) if so, the ALJ must evaluate the intensity and persistence of the claimant's pain or symptoms and the extent to which it affects the claimant's ability to work. 20 C.F.R. §§ 416.929(c)(2). In evaluating the second prong, the ALJ cannot require objective evidence of the pain itself. *Craig* v. *Chater,* 76 F.3d 585, 592–93 (4th Cir. 1996). However, objective medical evidence is a useful indicator in making reasonable conclusions about the intensity and persistence of the claimant's pain. SSR 96–7p, 1996 WL 374186, at *6.[3] Moreover, the ALJ must consider it in evaluating the individual's statements. *Id.*

The following is a nonexhaustive list of relevant factors the ALJ should consider in evaluating a claimant's symptoms, including pain: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, received to relieve the symptoms; and (6) any measures the claimant has used to relieve the symptoms. 20 C.F.R. §§ 404.1529(c)(3),

---

[3] Subsequent to the ALJ's decision, the Social Security Administration superseded SSR 96-7p with SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). The more recent Ruling eliminated the term "credibility" noting that "subjective symptom evaluation is not an examination of an individual's character[]" and directed that the determination "contain specific reasons for the weight given to the individual's symptoms[.]" *Id*. Because SSR 96-7p was in effect at the time the ALJ's decision, the undersigned will review the decision under SSR 96-7p. *See Keefer v. Colvin*, C/A No. 1:15-4738-SVH2016 WL 5539516, at *11 n.5 (D.S.C. Sept. 30, 2016).

416.929(c)(3). A claimant's subjective statements of pain alone are insufficient to establish disability. *Mickles* v. *Shalala*, 29 F.3d 918, 919 (4th Cir. 1994).

The ALJ has full discretion to weigh the subjective statements with the objective medical evidence and other matters of record. *Craig*, 76 F.3d at 595 (holding that claimant's allegations of pain need not be accepted to extent that they are inconsistent with the record); *see also Hawley* v. *Colvin*, No. 5:12-cv-260-FL, 2013 WL 6184954, at *15 (E.D.N.C. Nov. 14, 2013) (ALJ need not accept claimant's claims at face value). In a district court's review, the ALJ's findings are entitled to great weight because of the ALJ's ability to observe and evaluate testimony firsthand. *Shively*, 739 F.2d at 989–90.

Here, ALJ Sweeda concluded that Young's statements regarding her symptoms, including the duration, intensity, or persistence of her pain, were not fully credible. In making this finding, ALJ Sweeda did not discredit her allegations because she lacked objective evidence establishing their presence. As noted above, an ALJ must not require objective evidence of pain in order to credit a claimant's statements. This is particularly true for impairments such as fibromyalgia, the assessment of which often eludes objectively verifiable detection. *See Dowell* v. *Colvin,* No. 1:12-cv-1006, 2015 WL 1524767, at *3 (M.D.N.C. Apr. 2, 2015) ("Numerous courts have recognized that fibromyalgia's symptoms are entirely subjective and [that] there are no laboratory tests that can confirm the presence or severity of the syndrome") (alteration in original) (internal quotation marks omitted); *Elburn* v. *Comm'r, Soc. Sec.*, No. CCB-14–0887, 2014 WL 7146972, at *3 (D. Md. Dec. 12, 2014) (noting that "fibromyalgia 'poses particular challenges to credibility analyses due to the limited available objective medical evidence.'" (quoting *Gavigan* v. *Barnhart*, 261 F. Supp. 2d 334, 340 (D. Md. 2003)).

However, ALJ Sweeda was required to evaluate Young's statements of pain in conjunction with the objective evidence in the medical record. As noted above, Young's allegations of pain "need not be accepted to the extent they are inconsistent with the available evidence[.]" *Craig*, 76 F.3d 595.

ALJ Sweeda discussed how the objective evidence belied several of Young's allegations. Although Young claimed she could only sit for two minutes, ALJ Sweeda noted that she sat for over 30 minutes during the hearing. Tr. at 24. Young also testified that she was limited in her abilities to stand and walk, but Dr. Gebrail remarked that she had a stable gait. Tr. at 26. Treatment notes from Whiteville Urgent Care & Family Practice similarly noted that Young moved about generally well. Tr. at 25. Despite her claims of metal impairments, mental status examination yielded generally normal findings. Tr. at 24. The evidence also showed that Young had been noncompliant with her medications for mental health conditions. Tr. at 26.

Thus, ALJ Sweeda gave specific reasons with support in the record for discrediting Young's statements of pain and its limiting effects. The inconsistencies he identified provide substantial evidence to support his determination that Young's testimony regarding her symptoms was not fully credible.[4] For this reason, Young's argument on this issue lacks merit and is denied.

### E. Medical Opinion Evidence

Young also contends that ALJ Sweeda erred when he considered the assessments of his treating physician, Dr. Gregory. The Commissioner maintains that ALJ Sweeda properly weighed Dr. Gregory's assessments. The undersigned concludes that the reasons offered for assigning less weight to Dr. Gregory's findings are supported by substantial evidence.

---

[4] Nonetheless, even with the inconsistencies between Young's statements and the objective evidence, ALJ Sweeda gave some credit to Young's claims by limiting her to light work with additional environmental restrictions. Tr. at 22–23.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* §§ 404.1527(c), 416.927(c); *Nicholson* v. *Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

Opinions of treating physicians and psychologists on the nature and severity of impairments must be given controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Craig*, 76 F.3d at 590; *Ward* v. *Chater*, 924 F. Supp. 53, 55–56 (W.D. Va. 1996); SSR 96–2p, 1996 WL 374188 (July 2, 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In determining the weight to be ascribed to an opinion, the ALJ should consider the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, any specialization of the source of the opinions, and other factors that tend to support or contradict the opinions. 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 WL 374188, at *5;

*see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Ashmore* v. *Colvin*, No. 0:11–2865-TMC, 2013 WL 837643, at *2 (D.S.C. Mar. 6, 2013) ("In doing so [i.e., giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

Opinions from "other sources" who do not qualify as "acceptable medical sources" cannot be given controlling weight but are evaluated under the same factors used to weigh the assessments of physicians and psychologists. SSR 06–03p, 2006 WL 2329939, at *2, 4 (Aug. 9, 2006); *see also* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (identifying "other sources"). An ALJ must explain the weight given opinions of "other sources" and the reasons for the weight given. SSR 06–03p, 2006 WL 2329939, at *6; *Napier* v. *Astrue*, No. TJS-12–1096, 2013 WL 1856469, at *2 (D. Md. May 1, 2013).

Similarly, evaluations from sources who neither treat nor examine a claimant are considered under the same basic standards as evaluations of medical opinions from treating providers whose assessments are not given controlling weight. *See* 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e). The ALJ must offer an explanation of the weight given to these opinions. *Id.;* Casey v. *Colvin*, No. 4:14-cv-00004, 2015 WL 1810173, at *3 (W.D. Va. Mar. 12, 2015), *adopted by*, 2015 WL 1810173, at *1 (Apr. 21, 2015); *Napier*, 2013 WL 1856469, at *2.

More weight is generally given to the opinion of a treating source over the opinion of a non-treating examining source. Similarly, the opinion of an examining source is typically given more weight than the opinion of a non-examining source. *See* 20 C.F.R. §§ 404.1527(c)(1), (2), 416.927(c)(1), (2). Under appropriate circumstances, however, the opinions of a non-treating examining source or a non-examining source may be given more weight than those of a treating source. *See, e.g., Mastro* v. *Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (affirming ALJ's attribution

of greater weight to the opinions of a non-treating examining physician than to those of a treating physician); SSR 96–6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Opinions from medical sources on issues reserved to the Commissioner, such as disability, are not entitled to any special weight. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96–5p, 1996 WL 374183, at *2, 5 (July 2, 1996). But the ALJ must still evaluate these opinions and give them appropriate weight. SSR 96–5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator must evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

As noted above, Dr. Gregory assessed the following limitations: Young could sit for ten minutes and could stand for two minutes while alternating positions at will; she could never lift more than ten pounds; she required a cane to ambulate; she needed to elevate her legs to waist level 95% of the day; she would require unscheduled breaks every five to ten minutes; and she could rarely turn her head from side to side and never up and down. Tr. at 26. ALJ Sweeda gave little weight to Dr. Gregory's opinions, finding they were not consistent with the other evidence in the record. Tr. at 27.

ALJ Sweeda's determination identifies the specific reasons for the weight afforded to Dr. Gregory's opinions. ALJ Sweeda noted that specialists at Duke University rejected the fibromyalgia diagnosis. Tr. at 20. Additionally, Dr. Gregory's January 2015 assessment was prepared issued one day before the hearing but he has not treated Young in over eight months. Tr.

at 24. Young testified that when completing the disability forms, Dr. Gregory asked what she was able to do, suggesting that the limitations he assessed were based on her statements rather than his medical findings. Tr. at 27.

Moreover, Dr. Gregory's restriction finding that Young could sit only for ten minutes was contradicted by her presentation at the hearing where she sat for over 30 minutes without apparent difficulty. *Id.* And although Dr. Gregory stated that Young could rarely move her head side-to-side, Young testified that she was able to drive, which would presumably require such turning of the head.

A review of ALJ Sweeda's decision clearly indicates the inconsistencies between Dr. Gregory's opinions and the other evidence in the record. ALJ Sweeda properly supported his consideration of this expert's findings with specific reasons and citations to the record. For this reason, the undersigned cannot agree with Young's argument that ALJ Sweeda erred in weighing the medical evidence. Therefore, although Dr. Gregory was a treating provider for Young for several years, his assessments were not entitled to more weight. Accordingly, Young's claim is subject to dismissal.

### III. Conclusion

For the forgoing reasons, the court denies Young's Motion for Judgment on the Pleadings (D.E. 24), grants Berryhill's Motion for Judgment on the Pleadings (D.E. 26), and affirms the Commissioner's determination. This action is dismissed. The Clerk shall close this case.

Dated: January 10, 2018

_____
Robert T. Numbers, II
United States Magistrate Judge